**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-3345

BRAD BARNES,

Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC.,

Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Brad Barnes, through his attorneys Tyrone Glover, Helen Oh, and Genevieve Mesch of Tyrone Glover Law, LLC, respectfully alleges as follows:

## I. INTRODUCTION

1. Plaintiff files this action to recover for harms and losses he suffered as a result of unreasonable slippery conditions at a Marriott hotel on or about December 20, 2023.

## II. PARTIES, JURISDICTION, AND VENUE

2. At all times relevant to this Complaint, Plaintiff Brad Barnes was a citizen of the United States and resident of the State of Colorado.

3. Defendant Marriott International, Inc. ("Marriott") is incorporated in Delaware with headquarters at 7750 Wisconsin Avenue, Bethesda, Maryland 20814.

4. Defendant Marriott manages and operates the JW Marriott Cancun Resort and

Spa, located at Blvd. Kukulcan, Km 14.5, Lote 40-A, Zona Hotelera, Cancun, Quintana Roo, Mexico, 77500.

5. Marriott International is registered to do business in Colorado and has a Colorado registered agent, located at 1900 W. Littleton Boulevard, Littleton, Colorado 80120.

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 because the action is between citizens of different states, and the matter in controversy exclusive of interest and costs exceeds the sum or value of $75,000.

7. This Court has personal jurisdiction over Defendant Marriott pursuant to Colorado's long-arm statute, C.R.S. § 13-1-124. Marriott has purposefully availed itself of the privilege of conducting business in Colorado by: (a) operating approximately 164 hotel properties within Colorado, including The Ritz-Carlton Denver, the 1,501-room Gaylord Rockies Resort & Convention Center in Aurora representing an $800 million investment, and properties in Denver, Colorado Springs, Boulder, Aspen, Vail, Breckenridge, and Steamboat Springs; (b) employing thousands of workers across Colorado properties; (c) maintaining a registered agent (Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, CO 80120) and registering to do business in Colorado; (d) systematically soliciting business from Colorado residents through its Marriott Bonvoy loyalty program, which has over 228 million members worldwide and features a targeted promotion specifically for University of Colorado employees and students; (e) partnering with Chase Bank and American Express to market co-branded Marriott Bonvoy credit cards available nationwide including to Colorado residents, advertised

on Colorado television and through direct mail campaigns; (f) utilizing sophisticated digital advertising platforms (MARRIOTT MEDIA and American Express Ads Network) that target Colorado residents based on geographic location, demographics, and travel behavior using over 200 targetable attributes; (g) maintaining dedicated web pages marketing Colorado hotels and destinations; (h) recognizing Colorado residents as a distinct market segment in its privacy policy; (i) participating in the Colorado Hotel & Lodging Association and engaging in community partnerships with Colorado organizations; and (j) generating substantial revenue from Colorado residents who book stays at Marriott properties worldwide. These contacts are systematic, continuous, and purposefully directed at Colorado. Plaintiff's claims arise directly from Marriott's Colorado-directed marketing and loyalty program that induced Plaintiff, a Colorado resident, to book a stay at Defendant's JW Marriott Cancun Resort & Spa.

8. Venue is appropriate under 28 U.S.C. § 1391(b) and (c). Defendant Marriott International, Inc. is subject to personal jurisdiction in this district and therefore is deemed to reside in this district for venue purposes. Additionally, venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to Plaintiff's claims occurred in this district, including: (a) Plaintiff's residence in Colorado where he received Defendant's marketing materials and loyalty program solicitations; (b) Plaintiff's enrollment in Defendant's Marriott Bonvoy rewards program from Colorado; (c) Plaintiff's receipt of Defendants targeted marketing through the Bonvoy program, credit card partnerships, and digital advertising directed at Colorado residents; (d) Plaintiff's booking and reservation of his stay at the JW Marriott Cancun

Resort & Spa from Colorado; (e) Plaintiff's payment for said reservation from Colorado; (f) Defendant's operation of 164 properties in Colorado and systematic marketing to Colorado residents that induced Plaintiff to trust Defendant's brand and book the stay that resulted in his injury; and (g) Defendant's representations and warranties to Colorado residents regarding the quality, safety, and standards of Marriott-branded properties worldwide, including those outside Colorado. These events constitute a substantial part of the operative facts underlying this action.

## III. FACTUAL ALLEGATIONS

9. On December 20, 2023, Plaintiff Mr. Barnes and his wife, Toni Barnes vacationed in Cancun, Mexico, staying at the JW Marriott Cancun Resort & Spa located at Blvd. Kukulcan, Km 14.5, Lote 40-A, Zona Hotelera, Cancun, Quintana Roo, Mexico, 77500. At all relevant times, they were paying guests at JW Marriot Resort and Spa.

10. Plaintiff and his wife are Marriott Ambassador Elite members, achieving Marriott's highest tier membership status by staying over 100 nights and spending at least $23,000 annually at Marriott properties throughout the United States and abroad. Plaintiff and his wife booked the trip to Cancun from their home in Colorado through the Marriott website. The couple used their Marriott Bonvoy credit card to pay for their stay.

11. Upon information and belief, Defendant Marriott possessed operational control over the JW Marriott Cancun Resort & Spa common areas, pools, spa, establishment of maintenance schedules and safety procedures, hiring, training, and supervision of employees.

12. At all relevant times, Defendant was responsible for maintaining the Premises.

13. On the morning of December 20, 2023, Mr. Barnes went to the resort gym, weightlifting and riding about 10 miles the stationary bike.

14. Later that day, at approximately 3:00 p.m., Mr. Barnes visited the spa facilities at the hotel. He entered the cold plunge pool prior to his scheduled massage.

15. Mr. Barnes was conducting himself in a lawful and careful manner at all relevant times.

16. While exiting the cold plunge pool, Mr. Barnes slipped and fell hard on the spa steps. The surface was unreasonably slippery, lacked adequate non-slip protection, and was not properly maintained or supervised by spa staff.

17. Defendant failed to exercise reasonable care to maintain its premises in a safe condition for use by invitees and the public.



18. Defendant failed to exercise reasonable care to protect against dangers of which it knew or should have known, such as unreasonably wet and slippery conditions in the spa, which caused Plaintiff to slip and fall on December 20, 2023.

19. Mr. Barnes experienced excruciating pain in his right knee and could not get up. He laid immobile on the ground and required assistance from another guest.

20. Struggling to walk to the locker room, hotel staff helped Mr. Barnes into a wheelchair and wheeled him to his hotel room.

21. Medical personnel visited Plaintiff's hotel room and briefly examined Mr. Barnes but provided no further care or treatment beyond crutches.



22. Due to the severity of his injuries, Mr. Barnes and his wife shortened their trip and moved their return flight a day early. Mr. Barnes required wheelchair assistance for his return travel. Mr. Barnes was unable to use or extend his right knee.

23. The following day, on December 21, 2025, Mr. Barnes and his wife returned to Colorado. Mr. Barnes immediately went to Sky Ridge Medical Center Emergency Department located at 10101 Ridge Gate Parkway, Lone Tree, Colorado, 80124.

24. He was evaluated by Richard Talbot, DO, and x-rays were taken. Dr. Talbot's primary impression was a rupture of Plaintiff's right quadriceps tendon. Mr. Barnes was referred to Kaiser Permanente's orthopedic team to be seen as soon as possible due to a concern for a quadriceps tendon rupture. Mr. Barnes was provided with a knee immobilizer and prescribed hydrocodone/acetaminophen.

25. On December 23, 2023, Mr. Barnes was seen by Dr. Leslie Pearson at Kaiser Permanente in Centennial, Colorado. Dr. Pearson spoke with the on call orthopedic doctor, who confirmed Mr. Barnes' upcoming appointment for December 27, 2023. Dr. Leslie instructed Mr. Barnes to ice, elevate, and utilize crutches for the injury.

26. On December 26, 2025, Mr. Barnes had an MRI at First Look MRI in Centennial, Colorado. The MRI confirmed Mr. Barnes' quadriceps tendon rupture – the tendon detached from his kneecap and required reattachment.

27. On December 27, 2023, Mr. Barnes was seen by Dr. Andrew Morris in the Kaiser orthopedics department. Mr. Barnes was scheduled for a quadriceps tendon repair surgery at Sky Ridge Medical Center on December 29, 2023.

28. On December 29, 2023, Dr. Andrew Morris at Sky Ridge Medical Center performed a two-hour orthopedic surgery of Mr. Barnes' right quadriceps tendon.



29. Following the injury and surgery, Mr. Barnes was unable to resume his regular daily activities. For three months, Mr. Barnes required a walker to move about, and for eight to ten weeks, Mr. Barnes was unable to drive.

30. Before the injury, Mr. Barnes was extremely active, frequently cycling long distances, weight lifting, swimming, and running.

31. On May 1, 2024, Mr. Barnes started physical therapy at Pro Active Physical Therapy and Sports Medicine at 5801 S. Quebec Street, Suite 100, Greenwood Village, Colorado 80111. He went twice a week to begin rebuilding the strength in his knee. Mr. Barnes continues to attend physical therapy at the time of filing of this Complaint.

32. Also in May of 2024, Mr. Barnes began light exercise for about 10 minutes per day.

33. In January of 2025, Mr. Barnes had recovered enough to begin exercising for longer amounts of time. He is able to weight lift a few times a week, swim once a week, or ride a stationary bike once a week, all for about 40 minutes at a time or less. Before the injury, Mr. Barnes could do up to three workouts in a row and bike up to 100 miles. Since the injury, Mr. Barnes feels extremely exhausted and run down the day after a workout.

34. On March 5 and 19, 2025, Mr. Barnes visited Dr. Ryan Carr at the Colorado Shoulder, Hip, and Knee Institute, LLC at 145 Inverness Drive East Suite 350, Englewood, CO 80112. Mr. Barnes reported that he was unable to engage in activities he once did and felt he was at about 70% of his pre-injury health. Dr. Carr diagnosed Mr. Barnes

with arthritis of the right knee likely due to trauma from the injury. Dr. Carr also stated the injury would require additional future medical care including potential of a total knee arthroplasty.

35. Mr. Barnes has suffered significant damages as a result of Defendant's negligence, including medical expenses, loss of enjoyment of life, pain and suffering, out-of-pocket costs, and other non-economic losses.

36. Prior to the incident, Mr. Barnes was an extremely active person and athlete who regularly engaged in outdoor cycling, running, and other physical activities. For example, Mr. Barnes completed the Copper Triangle three times – most recently two years before the fall. This cycling feat is an 80-mile course through three mountain passes completed in approximately five hours.

37. As a direct result of his injuries, Mr. Barnes has suffered permanent and devastating limitations to his physical capabilities. He has not touched an outdoor bicycle since the incident. He cannot run and can only jog briefly and with extreme caution. He walks with a slight limp and requires assistance of a railing when descending stairs.

38. After six to eight months, Mr. Barnes realized he would never return to his previous athletic performance level due to the injury. While he can now use an indoor bike for 20-40 minutes, this represents a dramatic reduction from his former capabilities.

39. His physical limitations have resulted in significant loss of enjoyment of life, emotional and physical pain and suffering, physical impairment, distress, humiliation, medical costs and expenses, and other damages.

## V. STATEMENT OF CLAIMS FOR RELIEF

### CLAIM 1
### C.R.S. §§ 13-21-115
### Premises Liability Act (PLA)

40. Plaintiff incorporates all other paragraphs of this Complaint by reference as if fully set forth herein.

41. At all relevant times, Defendant was a Landowner as set forth in C.R.S. § 13-21-115(1).

42. Upon information and belief, at all relevant times, Defendant was an authorized party that possessed or owned the property. Defendant was also responsible for and exercised control over the condition of the property or activities conducted therein, including the maintenance and safety of the spa premises.

43. At all relevant times, Plaintiff was an "invitee" as set forth in C.R.S. § 13-21-115(1.5).

44. The slippery condition of the spa on Defendant's premises posed an unreasonable risk of harm to Plaintiff and other guests and invitees.

45. Defendant knew or should have known of the dangerous condition posed by the unreasonably wet, slippery, and unattended floor.

46. Defendant owed invitees, including Plaintiff, the non-delegable duty to use reasonable care to protect them from unreasonable risks to their health and safety which were or should have been known to Defendant.

47. Defendant owed its invitees, including Plaintiff, the non-delegable duty to use

reasonable care to properly maintain the Premises to prevent invitees from encountering preventable hazards, and prevent such invitees from suffering injuries which could result in injuries.

48. Defendant owed its invitees, including Plaintiff, the non-delegable duty to use reasonable care to seek out and identify hazards which might exist upon the Premises by virtue of their possession of the Premises, their business operations and marketing, and to use reasonable care to protect their invitees from foreseeable injury.

49. Defendant owed its invitees, including Plaintiff, the non-delegable duty to use reasonable care to train their employees to identify potential circumstances and conditions which could cause injury or risk thereof to its invitees, and to use all reasonable safety methods to protect its invitees from avoidable injury.

50. Defendant breached the foregoing duties by refusing to use reasonable care to protect its invitees and members of the community, including Plaintiff, who was lawfully on the Premises.

51. Defendant failed to warn Plaintiff or the community, failed to remove the hazard, and failed to adequately maintain the premises to prevent the public from exposure to unreasonable danger.

52. As the direct and proximate result of Defendant's acts and omissions described herein, Plaintiff suffered significant injuries, damages and losses, including but not limited to: past and future physical and mental pain and suffering, past and future physical impairment, past

and future emotional distress and inconvenience, past and future medical bills and expenses, disfigurement, consequential economic injuries, and loss of enjoyment of life.

53. Defendant's acts and omissions violated C.R.S. § 13-21-115, causing Plaintiff to suffer injuries, damages, and losses in amounts to be proven at trial.

## CLAIM 2
## Negligence

54. Plaintiff incorporates all other paragraphs of this Complaint by reference as if fully set forth herein.

55. On or about December 20, 2023, Plaintiff was severely injured when he slipped and fell in the resort spa, which was owned, leased, managed, operated, and/or controlled by Defendant.

56. Defendant owed a duty to all guests of the resort and spa to exercise reasonable care to ensure the property and premises were safe, properly maintained, and free from any dangerous conditions. Specifically, Defendant had a duty to properly maintain the spa area and pool floors. Defendant also had a duty to warn others, including Plaintiff, of any dangers on the property.

57. Defendant breached these duties by failing to properly maintain, clear, wipe down, and provide safety measures in the spa and pool area. Defendant further breached this duty by failing to warn Plaintiff and others of the dangerously wet and slippery condition, despite the fact that it was reasonably foreseeable that Plaintiff and other guests would utilize the spa and pools during his stay.

58. Defendant's negligence, carelessness, recklessness, and wrongdoing caused Plaintiff to slip and fall in the spa and pool area, causing Plaintiff significant injuries, including a complete quadriceps tendon rupture of his right knee, emergency surgery, ongoing physical therapy, physical impairment, and pain and suffering.

59. The incident described above and the resulting injuries and damages Plaintiff suffered and, in all reasonable likelihood, will continue to suffer, were proximately caused by the negligent conduct of Defendant and its employees, including Defendant's failure to: inspect the area where Plaintiff was injured; mop or remove the excessive water from the floor in the area where Plaintiff was injured; make the area where the Plaintiff was injured safe; direct others to make the area where the Plaintiff was injured safe; warn Plaintiff and other individuals of the wet and slippery conditions; direct others to warn Plaintiff and other individuals of the wet and slippery conditions; create, maintain, and/or implement safety procedures regarding the removal of excessive water at the pool and spa.

60. By reason of said negligence, carelessness, recklessness, and wrongdoing of Defendant, Plaintiff has and will continue to incur expenses for additional medical care and treatment, and continues to suffer the loss of enjoyment of life, as described herein, the amounts of which will be proven at trial.

## **CLAIM 3**
Respondeat Superior

61. Plaintiff incorporates all other paragraphs of this Complaint by reference as if fully set forth herein.

62. Without waiving the foregoing, under the doctrine of Respondeat Superior, Defendant is responsible for Plaintiff's damages that Defendant's employees' negligence caused as alleged above.

63. As a direct and proximate result of Defendant's negligent, reckless, and careless, actions and inactions alleged herein, Plaintiff sustained injuries, damages, and losses as further described herein, the amounts of which will be proven at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant as follows:

(a) For all losses and damages allowed by law, in an amount to be proven at trial sufficient to make him whole, to include, without limitation, general and special damages for physical injuries; physical impairment; pain and suffering; past and future medical and other related expenses; loss of enjoyment of life, emotional distress, humiliation, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(b) Interest on such losses and damages from the earliest date and at the maximum rate allowable by applicable law;

(c) All awardable costs of suit, including expert witness fees and the fees of other professionals;

(d) All other relief as the Court deems just and proper as allowed by applicable law.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this October 23, 2025.

TYRONE GLOVER LAW, LLC

*s/ A. Tyrone Glover*

A. Tyrone Glover #41529
Helen Oh #54056
Genevieve Mesch #59868
TYRONE GLOVER LAW, LLC
2590 Walnut Street
Denver, CO 80205
T: 303-577-1655
tyrone@tyroneglover.com
helen@tyroneglover.com
genevieve@tyroneglover.com